UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| KARLA WOOTEN, | 4:25-CV-04043-CCT |
| Plaintiff, | |
| vs. | |
| KELLY WASKO, SDOC Secretary, in individual capacity and official capacity; AARON MILLER, Warden, in individual capacity and official capacity; RICKY DIXON, Florida DOC Sec, in individual capacity and official capacity; and DAN SHANNON, WDOC Director, in individual capacity and official capacity, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR PRELIMINARY INJUNCTION AND 1915A SCREENING** |
| Defendants. | |

Plaintiff, Karla Wooten, an inmate at the South Dakota Women's Prison, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Wooten paid the full civil complaint filing fee. She also filed a motion for preliminary injunction, Docket 14, and a motion for summary judgment, Docket 16. She filed an amended complaint, Docket 3, and a second amended complaint, Docket 8. Because an amended complaint supersedes an original complaint, *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000), and all of Wooten's claims in her original and first amended complaints are included in the second amended complaint, this Court screens Wooten's second amended complaint under 28 U.S.C. § 1915A.

## 1915A SCREENING

### I.    Factual Background[1]

Wooten was incarcerated in a Florida Department of Corrections (FDOC) facility. Docket 8 at 4. On September 9, 2020, FDOC Secretary Ricky Dixon allegedly approved for Wooten to be transferred to a facility in Wyoming because she was a victim under the Prison Rape Elimination Act (PREA). *Id.* at 2, 4. When she was in the custody of the Wyoming Department of Corrections (WDOC), Wooten and approximately thirty other women were victims of sexual harassment. *Id.* at 4. Wooten advised WDOC Secretary Dan Shannon that a lawsuit was being filed on behalf of her and the other PREA victims. *Id.* On March 3, 2025, Dixon and Shannon, along with South Dakota Department of Corrections (SDDOC) Secretary Kelly Wasko, and South Dakota Women's Prison (SDWP) Warden Aaron Miller allegedly conspired and approved for Wooten to be transferred to the SDWP in retaliation for filing a PREA claim. *Id.* at 2, 4.

Before Wooten was transferred to the SDWP, she had appointments scheduled in Wyoming to see an oncologist, a lymphologist, and a physical therapist because she has non-Hodgkin lymphoma and lymphedema. *Id.* at 5. She was also scheduled for a mammogram and provided Epsom salt to soak her right leg due to substantial swelling. *Id.* On the day that Wooten was

---

[1] In Wooten's first motion for declaratory judgment, she advised the Court of retaliation that occurred after she filed her original complaint. Docket 18 at 2. However, she did not seek leave of court to file a supplemental complaint, and she does not appear to allege that any of the named defendants engaged in actions that violated her rights. *See generally id.*

transferred to the SDWP, she informed SDWP medical staff about her scheduled appointment to a health hospital. *Id.* Wooten also spoke with the SDWP Americans with Disabilities Act (ADA)/PREA Coordinator Dillon Tice[2] and showed him and staff letters about her medical care. *Id.* After Tice resigned on March 21, 2025, Wooten began receiving table salt—instead of Epsom salt—to soak her leg. *Id.* A sign was also posted that all mammograms were cancelled, and Wooten was not scheduled to visit the hospital or see an oncologist. *Id.*

Wooten also alleges that she fears for her life and safety due to conditions at the SDWP. *See generally id.* She claims that the SDWP is under a Federal Consent Decree, which required payment of a fine for fifteen years for housing inmates in condemned dorms, having gangs, and operating facilities at 198% capacity. *Id.* at 4, 6. Wooten alleges that multiple assaults by gang members have occurred in D Dorm at the SDWP and other interstate compact inmates have been attacked there. *Id.* at 6, 10. Wooten claims that SDWP Lieutenant Mamagay[3] tried to set her up to be placed in D Dorm to threaten her safety. *Id.* at 8–9, 11. She also claims that she was harassed by another inmate for commissary and other items. *Id.* at 10. On March 28, 2025, Wooten spoke with an investigator to request a PREA investigation.[4] *Id.* at 6. On April

---

[2] Tice is not named as a defendant. Docket 8 at 1–2.

[3] Mamagay is not named as a defendant. Docket 8 at 1–2.

[4] In Wooten's first amended complaint, she did clarify that she requested the PREA investigation to be opened against Miller for retaliation. Docket 3 at 6.

4, 2025, Wooten placed herself in protective custody after her requests for protective custody had been repeatedly refused. *Id.* at 8.

Wooten also claims that her access to the courts was inhibited. *Id.* at 4, 7. Wooten alleges that the WDOC deliberately sent her mail, including legal mail, to the South Dakota Men's Prison in Rapid City, South Dakota, which caused her to miss three deadlines in her other federal cases.[5] *Id.* Wooten wrote kites to Miller informing him of her deadlines. Docket 1 at 5. She also has not been able to access her 18,000 missing legal documents that she had on the WDOC server. Docket 8 at 4. Legal mailing was also not handled for a period of seven days in March at the SDWP. *Id.* at 4, 7. SDWP employee Loudemon[6] ignored Wooten's requests to access the law library for over three weeks. *Id.* at 4.

Wooten also claims that Miller and his staff "have been attempting to steal [her] legal settlement & committing PREA Retaliation & abuse & racist targeting[.]" *Id.* After Wooten spoke with the SDDOC's general counsel, Miller allegedly "started targeting [her] & denying her access to the $17,000 that she came to South Dakota with[.]"*Id.* at 6. She claims that staff tried

> to steal $6910 from [her] and then they divided her money into 3 separate accounts with $16,812 in a frozen status, refused to pay checks for [her] college paralegal classes & 5 times refused to put $35.00 into her regular account to try to force the plaintiff into a indigent status and to steal her money.

---

[5] In Wooten's original complaint, she alleged that Captain Tibbs and Sergeant Bowles were involved with taking her legal mail and causing her to miss the deadlines, but Wooten does not name Tibbs and Bowles as defendants. Docket 1 at 4; Docket 8 at 1–2.

[6] Loudemon is not named as a defendant. Docket 8 at 1–2.

4

*Id.* She filed complaints with the United States Department of Justice and Federal Bureau of Investigation against Miller and SDWP staff for fraud, waste, and abuse. *Id.* She claims that Miller refused to issue payment from her account for the filing fee in this case, *id.*, but the filing fee has been paid.

Wooten sues all defendants in their individual and official capacities. *Id.* at 1–2. She claims that defendants violated her rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments and the PREA. *Id.* at 4–6. She seeks removal from the SDWP and return to Wyoming. *Id.* at 7. She also requests that the WDOC be ordered to comply with their interstate compact policy, which she believes would require that she be returned to Florida. *Id.* She also requests "punitive, injunctive, and declaratory relief." *Id.*[7]

## II.    Legal Standard

The court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil

---

[7] Wooten filed several documents alleging that other events occurred at the facilities, but she did not file these as amendments or supplements to her second amended complaint nor does she name as a defendant any individual allegedly involved with the events.

rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess the claims under 28 U.S.C. § 1915A.

### III.    Discussion

#### A.    Claims Against Dixon and Shannon

Wooten sues FDOC Secretary Dixon and WDOC Secretary Shannon. Docket 8 at 2. Because Wooten has indicated that Dixon and Shannon reside in other districts, this Court will determine whether Wooten has established personal jurisdiction over Dixon and Shannon in this district. Although personal jurisdiction is an affirmative defense, "a district court may, in certain limited circumstances . . . dismiss under § 1915 for lack of personal jurisdiction and for improper venue, as well as for affirmative defenses." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006); *see also Sanders v. United States*, 760 F.2d 869, 871–72 (8th Cir. 1985) (per curiam) (affirming dismissal of claim on screening under § 1915(e)'s predecessor (which imposes similar screening requirements to § 1915A) based on lack of personal jurisdiction). "The party seeking to establish the court's in personam jurisdiction carries the burden of proof[.]" *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

A court may exercise personal jurisdiction if it is proper under the forum state's long arm statute and it comports with due process. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010); *Omni Cap. Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 (1987). South Dakota's long arm statute confers jurisdiction to the fullest extent permissible under the due process clause; thus, the question becomes whether asserting personal jurisdiction over defendants comports with due process. *See Ventling v. Kraft*,

161 N.W.2d 29, 34 (S.D. 1968). "Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 474–77 (1985)). Courts consider two kinds of personal jurisdiction: specific and general. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).

General jurisdiction is proper when defendant's contacts with the forum state are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Here, Wooten lists a Florida address for Dixon and a Wyoming address for Shannon. Docket 8 at 2. Wooten has not alleged any facts indicating that Dixon and Shannon have continuous and systematic contacts in South Dakota. Thus, she has not shown that this Court could exercise general personal jurisdiction.

Specific jurisdiction "is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or related to those activities." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). Here, Wooten has not alleged that Dixon and Shannon engaged in actions in or directed activities to South Dakota. *See generally* Docket 8. Although this Court is not aware of any binding authority,

8

some courts have considered a conspiracy theory, which occurs when "a non-resident defendant involved in a conspiracy who lacks sufficient minimum contacts with the forum state may nevertheless be subject to jurisdiction because of a co-conspirator's contacts with the forum." *SFRL, Inc. v. Galena State Bank & Trust Co.*, No. CIV. 10–4152, 2011 WL 4479065, at *4 (D.S.D. Sept. 22, 2011). But "courts allowing a plaintiff to proceed under a conspiracy theory have insisted on specific facts showing the participation in a conspiracy affecting the forum state[.]" *Id.* "Mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *Id.* (quoting *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir.1972)).

Here, Wooten's second amended complaint is verified. Docket 8 at 8. She has generally alleged that there was a conspiracy between Wasko with Wyoming and Florida "to commit a fraudulent act prohibited by federal law[.]" *Id.* at 2. She alleges that Dixon "[a]pproved in conspiracy with Wy & SD a 3rd party PREA Retaliation transfer which is prohibited by state/fed law[.]" *Id.* However, Wooten has not alleged specific facts showing the existence of a conspiracy or facts showing that Dixon and Shannon participated in a conspiracy. *See generally id.* Wooten's general allegations of conspiracy are insufficient. Thus, Wooten has not shown this Court has personal jurisdiction over Dixon and Shannon, and Wooten's claims against Dixon and Shannon are

dismissed without prejudice under 28 U.S.C. § 1915A(b)(1) for failure to state a
claim upon which relief may be granted.[8]

### B.    Claims Against Wasko and Miller

#### 1.    Official Capacity Claims for Money Damages

Wooten requests punitive damages against defendants. Docket 8 at 7.
Wasko and Miller are employees of the State of South Dakota. *Id.* at 2. "[A] suit
against a state official in his or her official capacity is not a suit against the
official but rather is a suit against the official's office." *Will v. Mich. Dep't of
State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471
(1985)). Thus, Wooten's official capacity claims against Wasko and Miller are
construed as claims against the State of South Dakota. *Id.* While "[§] 1983
provides a federal forum to remedy many deprivations of civil liberties, . . . it
does not provide a federal forum for litigants who seek a remedy against a State
for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state
for money damages unless the state has waived its sovereign immunity. *Id.* The
State of South Dakota has not waived its sovereign immunity. Further,
"[p]unitive damages are not available against government officials sued in an
official capacity[.]" *S.A.A. v. Geisler*, 127 F.4th 1133, 1140 (8th Cir. 2025) (en

---

[8] Even if this Court could transfer Wooten's claims against Dixon and Shannon to a
court where personal jurisdiction has been met, this Court finds that transferring the
claims would not be in the interests of justice because Wooten has previously filed
several lawsuits against these defendants in other districts. *See* Docket 8 at 3. *See
also See* PACER, Public Access to Court Electronic Records, Case Locator,
https://pcl.uscourts.gov/ (last visited July 30, 2025).

banc). Thus, Wooten's claims against Wasko and Miller in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915A(b)(2).

### 2. Individual Capacity Claims for Money Damages and Official Capacity Claims for Injunctive and Declaratory Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Wooten's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. *See id.*

### a. First Amendment

### (i) Retaliation

To allege a First Amendment retaliation claim, a plaintiff must "show (1) [she] engaged in a protected activity, (2) the government official took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty.*, 738

11

F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." *Revels*, 382 F.3d at 876. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)).

Here, Wooten claims that Wasko and Miller approved for Wooten to be transferred to the SDWP in retaliation for filing a PREA claim. Docket 8 at 2, 4. Although it is unclear to what extent Wasko and Miller were aware of Wooten's PREA claims before accepting her transfer to the SDWP, Wooten has claimed that Wasko and Miller acted in retaliation for her filing a PREA claim. *Id.* Wooten also alleges that Miller and his staff engaged in retaliation by denying her access to her account funds after she spoke with the SDDOC's general counsel about her prison safety concerns. *Id.* at 4, 6. Thus, Wooten's First Amendment retaliation claim against Wasko and Miller in their individual capacities for money damages and official capacities for injunctive and declaratory relief survives § 1915A screening by a very thin margin.

### (ii)    Access to the Courts

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To succeed on a claim for denial of access to the courts, a plaintiff

12

must show that she suffered actual injury because of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). To satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Lewis*, 518 U.S. at 353). "To assert a successful claim for denial of meaningful access to the courts, however, an inmate must demonstrate that he suffered prejudice." *Berdella v. Delo*, 972 F.2d 204, 210 (8th Cir. 1992). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (per curiam) (quoting *Lewis*, 518 U.S. at 356); *see also Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) (holding that the right to access to the courts applies in habeas and civil rights contexts).

Here, Wooten does not claim that Wasko was involved with alleged violations of her right to access the courts, and Wooten does not claim that her right to access the court was violated because of Wasko's failure to train or supervise her staff. *See generally* Docket 8. Wooten claims that she notified Miller of her pending deadlines in other federal cases. Docket 1 at 5. But she does not allege that her other cases related to challenges to her sentences or conditions of confinement. *See generally id.* In her original complaint, Wooten indicated that one of her actions was with the Internal Revenue Services. *Id.* at 5. She also claims that she was denied access to the law library, but she has not alleged that denying her access to the law library caused her to suffer

13

actual prejudice. Docket 8 at 4, 7. Thus, Wooten has failed to state a claim upon which relief may be granted, and her First Amendment access-to-the-courts claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).[9]

### (iii)    Right to Send and Receive Mail

Inmates retain the First Amendment "right to send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994) (citations omitted). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 125 (1977). "While prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights because of the needs of the penal system." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011) (per curiam) (citing *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). In *Turner*, the Supreme Court held that prison rules and restrictions on First Amendment rights are constitutional only "if [they are] reasonably

---

[9] In a declaration submitted with Wooten's motion for preliminary injunction, she appears to allege that denial of access to the law library has hindered her ability to bring this lawsuit. Docket 15 at 5. But at this time, she has filed her complaint—and filed two amended complaints—and has not shown that she suffered any actual injury or prejudice.

related to legitimate penological interests." 482 U.S. at 89. The Eighth Circuit

has applied *Turner*'s four-factor test to prison regulations regarding mail:

> (1) whether there is a valid rational connection between the
> regulation and the legitimate government interest it purports to
> further; (2) whether the inmate has an alternative means of
> exercising his constitutional right; (3) the impact that
> accommodation of the inmate's right would have upon others,
> including inmates as well as non-inmates; and (4) the absence of a
> ready alternative to the regulation.

*Thongvanh v. Thalacker*, 17 F.3d 256, 259 (8th Cir. 1994). This standard

applies to both incoming and outgoing mail. *Id.*

Here, Wooten claims that she wrote to Miller about pending legal

deadlines, but she does not indicate that Miller personally interfered with her

mail or that her right was violated due to Miller's failure to train or supervise

his staff. *See* Docket 1 at 5; Docket 8 at 4, 7. Wooten also has not alleged that

Wasko was personally involved with impeding her right to send and receive

mail or that her right was violated due to Wasko's failure to train or supervise

her staff. *See generally* Docket 8. Thus, Wooten's individual capacity claim

against Miller and Wasko for violation of her First Amendment right to send

and receive mail is dismissed without prejudice for failure to state a claim upon

which relief may be granted under 28 U.S.C. § 1915A(b)(1).

Because the Supreme Court has held that personal involvement is not

necessarily required for official capacity claims, *Ex parte Young*, 209 U.S. 123,

127 (1908), this Court considers whether Wooten has alleged sufficient facts for

her First Amendment right to send and receive mail claims against Wasko and

Miller in their official capacities for injunctive and declaratory relief to survive

screening. Wooten claims that her mail was deliberately sent to the South Dakota Men's Prison, but she claims that the WDOC was responsible for sending her mail, Docket 8 at 4, 7, and her claims against the WDOC Secretary have been dismissed. She also claims that mailing was not handled for a period of seven days in March. *Id.* "Absent claims of intentional delay, mere delay in delivery of prisoner mail, especially any delay that occurs over the weekend, is not unreasonable and thus fails to raise a constitutional question." *Valiant-Bey v. Morris*, 829 F.2d 1441, 1444 n.5 (8th Cir. 1987) (citation modified). Because Wooten has alleged insufficient facts to show that she suffered more than a mere delay of mail, her First Amendment right to send mail claim against Wasko and Miller in their official capacities for injunctive and declaratory relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### b.    Fifth Amendment

Wooten alleges that her claims fall under the Fifth Amendment. Docket 8 at 4–6. Equal protection and due process claims against the federal government arise under the Fifth Amendment, and equal protection and due process claims against the states arise under the Fourteenth Amendment. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Doe v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018) (stating that the equal protection clause is actionable

16

against states under the Fourteenth Amendment and applies to the federal

government through the due process clause of the Fifth Amendment). Because

Wooten only sues state actors, her Fifth Amendment equal protection and due

process claims are dismissed without prejudice for failure to state a claim upon

which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### c.    Sixth Amendment

Wooten alleges that her claims arise under the Sixth Amendment. Docket

8 at 4–6. The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a
> speedy and public trial, by an impartial jury of the State and
> district wherein the crime shall have been committed, which
> district shall have been previously ascertained by law, and to be
> informed of the nature and cause of the accusation; to be
> confronted with the witnesses against him; to have compulsory
> process for obtaining witnesses in his favor, and to have the
> Assistance of Counsel for his defence.

U.S. Const. amend. VI. Wooten has not explained how any of her claims relate

to the Sixth Amendment. *See generally* Docket 8. Thus, Wooten's Sixth

Amendment claims are dismissed without prejudice under 28 U.S.C.

§ 1915A(b)(1).

### d.    Eighth Amendment

### (i)    Conditions of Confinement

Wooten claims that she was subjected to conditions that threatened her

safety, including condemned dorms, gangs, and overpopulation. Docket 8 at 4,

6, 8–11. "[T]he Constitution 'does not mandate comfortable prisons'; it

prohibits 'inhumane ones.'" *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995)

(quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Supreme Court

has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation modified). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation modified).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measure of life's necessities" or to constitute "a substantial risk of serious harm" to her health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (quoting *Farmer*, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement requires examining the totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Here, Wooten does not allege any facts indicating that Wasko and Miller were aware of a substantial risk of harm to her health and safety and were deliberately indifferent to that risk. *See generally* Docket 8. Thus, Wooten's Eighth Amendment deliberate indifference to conditions of confinement claim

against Wasko and Miller in their individual capacities is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A.

For official capacity claims for equitable relief, the Supreme Court has held that personal involvement is not necessarily required. *Ex parte Young*, 209 U.S. at 127. Because Eighth Amendment claims typically require some level of intent, some courts have held that the subjective component can be met through "the institution's historical indifference[.]" *Whirl Wind Horse v. Lincoln Cnty.*, 4:24-CV-04148-RAL, 2025 WL 501857, at *6 (D.S.D. Feb. 14, 2025) (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1542 (11th Cir. 1993)) (collecting cases). Here, Wooten alleges that the SDWP has been subjected to a fine for fifteen years because of the conditions of confinement at the institution. Docket 8 at 4, 6. She also claims that she requested protective custody several times. *Id.* at 8. Thus, this Court cannot determine that Wooten's Eighth Amendment deliberate indifference to conditions of confinement claim is wholly without merit, and Wooten's Eighth Amendment deliberate indifference to conditions of confinement claim against Wasko and Miller in their official capacities for injunctive and declaratory relief survives § 1915A screening by a very thin margin.

### (ii)    Serious Medical Needs

Liberally construing Wooten's second amended complaint, she alleges an Eighth Amendment deliberate indifference to serious medical needs claim. Docket 8 at 5. "[D]eliberate indifference to serious medical needs of prisoners

19

constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citation omitted).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Coleman*, 114 F.3d at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable

20

for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, Wooten has not alleged that Wasko and Miller were aware of and deliberately indifferent to her serious medical needs. *See generally* Docket 8. Wooten also has not shown that the institution was historically indifferent to her serious medical needs. *See generally id.* Thus, Wooten's Eighth Amendment deliberate indifference to serious medical needs claim against Wasko and Miller is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### e.    Fourteenth Amendment

#### (i)    Due Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "A liberty interest protectible under the due process clause of the fourteenth amendment 'may arise from two sources -- the Due Process Clause itself and the laws of the States.'" *Mahfouz v. Lockhart*, 826 F.2d 791, 792 (8th Cir. 1987) (per curiam) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).

Here, it is unclear how Wooten alleges that her due process rights have been violated. *See generally* Docket 8. If this Court were to liberally construe

21

Wooten's second amended complaint to allege a due process claim for transfer from her prior institutions, she would fail to state a claim upon which relief may be granted because courts have held that there is not a constitutional right to reside in a particular institution. *See Murphy v. Mo. Dep't of Corr.*, 769 F.2d 502, 503 (8th Cir. 1985) (per curiam) ("a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer" (citing *Olim v. Wakinekona*, 461 U.S. 238 (1983)); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) ("[T]here is no liberty interest in assignment to any particular prison.").

If this Court were to also liberally construe Wooten's second amended complaint to allege a due process claim for confiscation of her money, she would also fail to state a claim. Courts have held that an intentional deprivation of property does not violate the due process clause if there is an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "A post-deprivation remedy does not satisfy due process requirements if the property deprivation was effected pursuant to an established state procedure." *Bell v. Tjeerdsma*, 4:24-CV-04068-LLP, 2025 WL 1696772, at *9 (D.S.D. June 16, 2025) (citing *Hudson*, 468 U.S. at 532). South Dakota law provides a post-deprivation remedy for wrongful conversion of personal property. SDCL § 21-3-3. Wooten does not allege that her money was wrongfully taken pursuant to an established state procedure. *See generally* Docket 8.

To the extent that her second amended complaint could be construed to allege a due process claim because she was not allowed to file prison grievances, she fails to state an actionable claim. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (alteration in original) (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam). Thus, Wooten's Fourteenth Amendment due process claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### (ii)    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy*, 372 F.3d at 984 (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). The Eighth Circuit Court of Appeals has explained that for a prisoner to prevail on an equal protection claim, she "must show that [she] is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (citations and internal quotation omitted). Race and religion are suspect classifications. *Id.* at

816 (citing *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006)); *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976). An equal protection claim has been recognized through a "class of one" where a "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Wooten claims that her Fourteenth Amendment right to equal protection was violated.[10] Docket 8 at 4–6. She generally claims that she was subjected to racism, *see generally id.*, but Wooten has not alleged any facts showing that she was treated differently that other similarly situated inmates.[11] Thus, she has failed to state a claim upon which relief may be granted, and her Fourteenth Amendment equal protection claim is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### f.    PREA

To the extent that Wooten seeks to allege a claim directly under the PREA, many courts have held that the PREA does not provide a private right of action. *East v. South Dakota*, 4:22-CV-04126-RAL, 2023 WL 1991424, at *7

---

[10] Although in her second amended complaint, Wooten generally claims that her Fourteenth Amendment rights were violated, Docket 8 at 4–6, she specifically claimed in her original complaint that her right to equal protection was violated. Docket 1 at 3. Thus, this Court liberally construes Wooten's second amended complaint to allege an equal protection claim.

[11] In Wooten's declaration in support of her motion for preliminary injunction she claims that she "is a class of one she was illegally discriminated against and targeted by SDOC, FDC and WDOC staff intentionally and without a rational basis." Docket 15 at 7. But she has not alleged that she was treated differently than similarly situated inmates.

(D.S.D. Feb. 14, 2023) (citing *Rindahl v. Kaemingk*, 4:17-CV-04088-RAL, 2017 U.S. Dist. LEXIS 105964, at *2 (D.S.D. July 10, 2017)). Wooten does not cite to any authority to the contrary. Thus, Wooten's claim under the PREA is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### g.    Civil Conspiracy

Liberally construing Wooten's complaint, she alleges a civil conspiracy claim under § 1983. Docket 8 at 2. To plead a civil conspiracy under § 1983, Wooten must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck*, 700 F.3d 340, 360–61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). Although a plaintiff can use circumstantial evidence to show a conspiracy, a plaintiff bringing a § 1983 conspiracy claim must allege "specific facts tending to show" that the defendants reached an agreement or had a "meeting of the minds" to deprive the plaintiff of a constitutional right. *See Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010).

Here, Wooten has not sufficiently alleged that defendants reached an agreement or had a meeting of the minds to deprive her of her constitutional

rights. *See* Docket 8 at 2. Thus, Wooten's § 1983 conspiracy claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

**MOTION FOR SUMMARY JUDGMENT**

Wooten filed a "Motion for Summary Judgment PREA Exemption for PLRA[.]" Docket 16 (citation modified). Although classified as a motion, Wooten's filing appears to be a preemptive response to what she believes defendants will state in a future motion for summary judgment. *Id.* Because this Court must liberally construe pro se filings, this Court will consider Wooten's filing as a motion for summary judgment.

When a motion for summary judgment has been filed, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this Court's Local Rules,

> All motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Each material fact must be presented in a separate numbered statement with an appropriate citation to the record in the case.

D.S.D. Civ. LR 56.1(A). Pro se litigants are required to comply with a court's local rules and the Federal Rules of Civil Procedure. *Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002). Here, Wooten did not comply with this Court's Local Rules because she has not provided a statement of material facts in separate numbered paragraphs that contains citation to the record. Further, it appears that Wooten's motion is premature because her

26

complaint is just now being screened, she has not served defendants, defendants have not answered, and discovery has not been conducted. Thus, Wooten's motion for summary judgment, Docket 16, is denied without prejudice to filing a motion that complies with this Court's Local Rules.

## MOTION FOR PRELIMINARY INJUNCTION

Wooten filed a motion for preliminary injunction. Docket 14. She seeks removal from the SDWP and transfer back to the WDOC. *Id.* at 4; Docket 15 at 5. She requests that she be given all her property including, her tablet, jewelry, and legal documents. Docket 14 at 4. She also seeks an order of protection from Wasko and Miller as well as other SDDOC staff and inmates who are not named as defendants. Docket 15 at 6.

"A preliminary injunction is an extraordinary remedy[.]" *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). When ruling on a motion for a preliminary injunction, the court considers "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).

Here, Wooten has not shown that she is likely to succeed on the merits. Thus, Wooten's motion for preliminary injunction, Docket 14, is denied without prejudice.

### NOTICE OF RULE 4(m)

Because Wooten paid her full filing fee, this Court is not obligated to "issue and serve all process" under 28 U.S.C. § 1915(d). Wooten must arrange for service of process on the defendants. Federal Rule of Civil Procedure 4(m) states in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Wooten is on notice of this Court's intention to dismiss her claims without prejudice if she does not serve each defendant by **ninety days from the date of this Court's screening order**, pursuant to Rule 4(m), unless she can show good cause for her failure to serve the respective defendant.

### CONCLUSION

Thus, it is ORDERED:

1.    That Wooten's claims against Dixon and Shannon are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

2.    That Wooten's claims against Wasko and Miller in their official capacities for money damages are dismissed with prejudice under 28 U.S.C § 1915A(b)(2).

3.     That Wooten's First Amendment retaliation claim against Wasko and Miller in their individual capacities for money damages and official capacities for injunctive and declaratory relief survives § 1915A screening.

4.     That Wooten's Eighth Amendment deliberate indifference to conditions of confinement claim against Wasko and Miller in their official capacities for injunctive and declaratory relief survives § 1915A screening.

5.     That Wooten's remaining claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

6.     That Wooten's motion for preliminary injunction, Docket 14, is denied.

7.     That Wooten's motion for summary judgment, Docket 16, is denied.

8.     That Wooten is on notice of this Court's intention to dismiss her claims without prejudice if she does not serve each defendant by **ninety days from this Court's screening order**, pursuant to Rule 4(m), unless she can show good cause for her failure to serve the respective defendant.

9.     That the Clerk of Court shall send Wooten two blank summons forms so that she may arrange for her own service of process on Wasko and Miller.

10.     That defendants will serve and file an answer or responsive pleading to the amended complaint on or before 21 days following the date of

service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

11.    That Wooten will keep the Court informed of her current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Civil Local Rules while this case is pending.

Dated August 13, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE